# U.S. District Court
## District of Maryland (Baltimore)
## CRIMINAL DOCKET FOR CASE #: <u>1:18−mj−01692−JMC</u> All Defendants

Case title: USA v. Wolfe                                    Date Filed: 06/08/2018
 Other court case number:  1:18−cr−00170 District of Columbia

Assigned to: Magistrate Judge J. Mark Coulson

**Defendant (1)**

**James A. Wolfe**

| **Pending Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Opening)** | |
| --- | --- |
| None | |

| **Terminated Counts** | **Disposition** |
| --- | --- |
| None | |

| **Highest Offense Level (Terminated)** | |
| --- | --- |
| None | |

| **Complaints** | **Disposition** |
| --- | --- |
| None | |

**Plaintiff**

| **USA** | represented by | **Philip Arthur Selden** |
| --- | --- | --- |
| | | Office of the United States Attorney |
| | | District of Maryland |
| | | 36 S. Charles Street |
| | | Baltimore, MD 21201 |
| | | 4102094900 |
| | | Email: Philip.Selden@usdoj.gov |
| | | *LEAD ATTORNEY* |
| | | *ATTORNEY TO BE NOTICED* |
| | | *Designation: Assistant US Attorney* |

Email All Attorneys
Email All Attorneys and Additional Recipients

| Date Filed | # | Page | Docket Text |
|---|---|---|---|
| 06/08/2018 | 1 | 3 | Rule 5(c)(3) Documents Received as to James A. Wolfe (kvs, Deputy Clerk) (Additional attachment(s) added on 6/11/2018: # 1 Exhibit Order to Seal, # 2 Exhibit Indictment) (kvs, Deputy Clerk). (Entered: 06/11/2018) |
| 06/08/2018 | 2 | | Initial Appearance in Rule 5(c)(3) Proceedings as to James A. Wolfe held on 6/8/2018 before Magistrate Judge J. Mark Coulson.(FTR: Vockroth) (kvs, Deputy Clerk) (Entered: 06/11/2018) |
| 06/08/2018 | 3 | | CJA 23 Financial Affidavit by James A. Wolfe (kvs, Deputy Clerk) (Entered: 06/11/2018) |
| 06/08/2018 | 4 | 18 | ORDER APPOINTING FEDERAL PUBLIC DEFENDER as to James A. Wolfe. Signed by Magistrate Judge J. Mark Coulson on 6/8/2018. (kvs, Deputy Clerk) (Entered: 06/11/2018) |
| 06/08/2018 | 5 | 19 | CONTRIBUTION ORDER as to James A. Wolfe. Signed by Magistrate Judge J. Mark Coulson on 6/8/2018. (kvs, Deputy Clerk) (Entered: 06/11/2018) |
| 06/08/2018 | 6 | 20 | WAIVER of Rule 5(c)(3) Hearing by James A. Wolfe(kvs, Deputy Clerk) (Entered: 06/11/2018) |
| 06/08/2018 | 7 | 21 | COMMITMENT TO ANOTHER DISTRICT as to James A. Wolfe. Defendant committed to District of District of Columbia.. Signed by Magistrate Judge J. Mark Coulson on 6/8/2018. (kvs, Deputy Clerk) (Entered: 06/11/2018) |
| 06/08/2018 | 8 | 22 | ORDER Setting Conditions of Release as to James A. Wolfe. Signed by Magistrate Judge J. Mark Coulson on 6/8/2018. (kvs, Deputy Clerk) (Entered: 06/11/2018) |
| 06/11/2018 | 9 | 25 | Receipt for Surrender of Passport as to James A. Wolfe (kos, Deputy Clerk) (Entered: 06/11/2018) |

AO 442 (Rev. 01/09) Arrest Warrant

**SEALED**     # UNITED STATES DISTRICT COURT

for the

District of Columbia

| | |
|---|---|
| United States of America<br>v.<br>James A. Wolfe<br><br>*Defendant* | )<br>)<br>)<br>)<br>)    Case: 1:18-cr-00170<br>Assigned To : Judge Jackson, Ketanji Brown<br>Assign. Date : 6/7/2018<br>Description: INDICTMENT |

## ARREST WARRANT

To:    Any authorized law enforcement officer

**YOU ARE COMMANDED** to arrest and bring before a United States magistrate judge without unnecessary delay

*(name of person to be arrested)*    James A. Wolfe

who is accused of an offense or violation based on the following document filed with the court:

☑ Indictment    ☐ Superseding Indictment    ☐ Information    ☐ Superseding Information    ☐ Complaint

☐ Probation Violation Petition    ☐ Supervised Release Violation Petition    ☐ Violation Notice    ☐ Order of the Court

This offense is briefly described as follows:

18 U.S.C. § 1001- False Statement

Date:   06/07/2018

_____
*Issuing officer's signature*

City and state:    Washington, D.C.

United States Magistrate Judge Robin M. Meriweather
*Printed name and title*

---

**Return**

This warrant was received on *(date)* _____ , and the person was arrested on *(date)* _____

at *(city and state)* _____

Date: _____

U.S. District and Bankruptcy Courts
for the District of Columbia
A TRUE COPY
ANGELA D. CAESAR, Clerk
By _____
Deputy Clerk
JUN 0 7 2018

INVESTIGATE COPY ONLY
ORIGINAL ON FILE WITH
US MARSHAL RM

*Arresting officer's signature*

_____
*Printed name and title*

AO 442 (Rev. 01/09) Arrest Warrant (Page 2)

**This second page contains personal identifiers provided for law-enforcement use only
and therefore should not be filed in court with the executed warrant unless under seal.**

*(Not for Public Disclosure)*

Name of defendant/offender:        James A. Wolfe

Known aliases:

Last known residence:        5702 Rosanna Place, Ellicott City, MD 21043

Prior addresses to which defendant/offender may still have ties:

Last known employment:

Last known telephone numbers:

Place of birth:

Date of birth:        12/20/1960

Social Security number:        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

Height:        5' 10"                              Weight:        UBK

Sex:        Male                                      Race:

Hair:        Brown                                    Eyes:        Brown

Scars, tattoos, other distinguishing marks:

History of violence, weapons, drug use:

Known family, friends, and other associates *(name, relation, address, phone number)*:

FBI number:

Complete description of auto:

Investigative agency and address:        FBI WFO

Name and telephone numbers (office and cell) of pretrial services or probation officer *(if applicable)*:

Date of last contact with pretrial services or probation officer *(if applicable)*:

4

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA )
)
    v. )
)
JAMES A. WOLFE )

Case: 1:18–cr–00170
Assigned To : Judge Jackson, Ketanji Brown
Assign. Date : 6/7/2018
Description: INDICTMENT

### ORDER TO SEAL

Having considered the Government's Motion to Seal the Indictment, Bench Warrant, and

Related Paperwork ("Motion to Seal"), and for good cause stated therein, the Court makes the

following findings:

  1.  Sealing the Indictment, Bench Warrant, the Motion to Seal, and this Order in the

above-captioned matter will further the legitimate prosecutorial interest in locating and obtaining

custody of defendant James A. Wolfe.

  2.  The public docketing at this time of the Indictment, the Bench Warrant, the Motion

to Seal, and this Order, could compromise the government's ability effectively to obtain custody

of the defendant, who remains at large.

  3.  Accordingly, these facts present a legitimate basis for sealing the Indictment, the

Bench Warrants, the Motion to Seal, and this Order to Seal.

  Based on the foregoing findings of fact, the Motion is hereby

  GRANTED, and it is hereby ORDERED that, in the above-captioned matter, the

Indictment, the Bench Warrant, the Motion to Seal, and this Order to Seal shall be sealed by the

Clerk of the Court, except that the United States Government may disclose the existence and/or

contents of the Indictment, Bench Warrants and this Order to Seal to appropriate law

1



enforcement officials or Executive Branch member, and other personnel, to the extent that such disclosure is in furtherance of efforts to obtain custody of or to detain the defendant.

It is FURTHER ORDERED that the Clerk's office shall not make any entry on the public docket in this case of the Indictment, Bench Warrant, the Motion to Seal, and this Order to Seal until further order of this Court.

It is FURTHER ORDERED that the Indictment and this Order to Seal shall be unsealed upon the arrest of the defendant.

It is FURTHER ORDERED that the Clerk of the Court shall provide to the United States Attorney's Office certified copies of the Indictment, Bench Warrant, and the instant Motion to Seal and Order, upon request.

Date: ___6 / 7 / 18___                    _____
                                          UNITED STATES MAGISTRATE JUDGE

cc:    Jocelyn Ballantine
       Tejpal Chawla
       Assistant United States Attorneys
       555 4th Street, N.W., 11th Floor
       Washington, D.C. 20530
       (202) 252-7252

2

**SEALED**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**Holding a Criminal Term**
**Grand Jury Sworn in on May 3, 2018**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Criminal No.: |
| | ) | |
| v. | ) | Violation: **18 U.S.C. § 1001** |
| | ) | **(False Statement)** |
| JAMES A. WOLFE | ) | |

### INDICTMENT

The Grand Jury charges:

Case: 1:18-cr-00170
Assigned To : Judge Jackson, Ketanji Brown
Assign. Date : 6/7/2018
Description: INDICTMENT

### COUNT ONE

At all times relevant to this Indictment, unless otherwise indicated:

### BACKGROUND

1.     Between in or around May 1987 and in or around December 2017, the defendant,

JAMES A. WOLFE, was employed as the Director of Security for the United States Senate Select

Committee on Intelligence (SSCI), located within the Hart Senate Office Building, in the District

of Columbia. As SSCI Director of Security, WOLFE was responsible for receiving, maintaining,

and managing all classified information provided to the SSCI by the Executive Branch of the

United States.

2.     "Classified information" is information the unauthorized disclosure of which

reasonably could be expected to cause identifiable or describable damage to the national security

of the United States. The unauthorized disclosure of SECRET information reasonably could be

expected to cause serious damage to the national security. The unauthorized disclosure of TOP

SECRET information reasonably could be expected to cause exceptionally grave damage to the

national security.

### FBI INVESTIGATION

3.      Beginning in or around 2017, the Federal Bureau of Investigation (FBI), an agency of the Executive Branch of the United States government, was conducting a criminal investigation into multiple unauthorized disclosures of classified information to one or more members of the news media ("the FBI Investigation").

4.      It was material to the FBI Investigation whether WOLFE had been in contact with any reporters and, if so, who those reporters were, the nature and extent of those contacts, and the means by which those contacts occurred.

5.      On or about October 30, 2017, FBI agents met with WOLFE and informed him that they were investigating the unauthorized disclosure of classified information that had been provided to the SSCI by the Executive Branch of the United States for official purposes.

6.      On or about December 15, 2017, FBI agents conducted a voluntary, noncustodial interview of WOLFE in the District of Columbia.  Prior to questioning, the FBI agents presented WOLFE with a typewritten questionnaire ("the Investigative Questionnaire") which contained blank lines to check indicating "Yes" or "No" answers as well as space to provide any requested explanation.  FBI agents read the questions in the Investigative Questionnaire aloud to WOLFE and he answered orally and wrote on the document.

            a.      Question 1 of the Investigative Questionnaire read as follows: "Do you understand that you are being provided this questionnaire as part of a criminal investigation being conducted by the FBI[?]"  WOLFE stated and checked "Yes," and initialed this answer.

            b.      Question 3 of the Investigative Questionnaire advised WOLFE, "Do you understand making false statements, orally or in writing to the FBI in connection with a

2

federal criminal investigation is a violation of law, including but not limited to, a violation of Title 18, United States Code, Section 1001?" WOLFE stated and checked "Yes," and initialed this answer.

     c.     During the interview, FBI agents showed WOLFE a copy of a news article authored by three reporters, including REPORTER #1, about an individual (referred to herein as "MALE-1"), that contained classified information that had been provided to the SSCI by the Executive Branch for official purposes.

     d.     Question 9 of the Investigative Questionnaire asked, "Have you had any contact with" any of those three reporters. As to each reporter, WOLFE stated and checked "No."

     e.     Question 10 of the Investigative Questionnaire asked, "Besides [the three named reporters], do you currently have or had any contact with any other reporters (professional, official, personal)?" Before answering this question, WOLFE stated orally to the FBI agents that although he had no official or professional contact with reporters, he saw reporters every day, and so to "feel comfortable" he would check "Yes." He did so, and initialed this answer.

     f.     Question 10 of the Investigative Questionnaire further asked, "If yes, who and describe the relationship (professional, official, personal)." In the space provided, WOLFE hand wrote "Official – No" and "Professional – No." WOLFE then orally volunteered that he certainly did not talk to reporters about anything SSCI-related. FBI agents orally asked WOLFE if he had traveled internationally with any reporter, gone to a baseball game or to the movies with a reporter, or had weekly or regular electronic

3

communication with a reporter.  To each question WOLFE verbally responded "No.".

WOLFE then wrote "Personal – No" on the Investigative Questionnaire.

g.     Question 11 of the Investigative Questionnaire asked, "If yes to question

ten, did you discuss or disclose any official U.S. government information or documents

whether classified or unclassified which is the property of the U.S. government without

express authorization from the owner of the information?".  WOLFE stated and checked

"No" and initialed this answer.

h.     WOLFE signed and dated the Investigative Questionnaire next to the

following warning: "I declare under penalty of perjury under the laws of the United States

of America that the foregoing is true and correct."

8.     On or about December 15, 2017, after WOLFE signed the Investigative

Questionnaire, the FBI agents asked WOLFE about an article written by REPORTER #2 that

contained information that had been provided to the SSCI by the Executive Branch for official

purposes.  WOLFE denied knowing about the reporter's sources for the article.  After WOLFE

stated that he did not know about REPORTER #2's sources, FBI agents confronted WOLFE with

pictures showing WOLFE together with REPORTER #2.    After being confronted, WOLFE

admitted to the FBI agents that he had lied to them, and that he had engaged in a personal

relationship with REPORTER #2 since 2014, but maintained that he (WOLFE) had never

disclosed to REPORTER #2 classified information or information that he learned as Director of

Security for the SSCI that was not otherwise publicly available.  WOLFE also stated that he never

provided REPORTER #2 with news leads, intelligence, or information about non-public SSCI

matters.

4

Case 1:18-mj-01692-JMC   Document 1-2   Filed 06/06/18   Page 5 of 11

9.    During the December 15, 2017 interview, WOLFE continued to deny any contact with other reporters and denied providing to any of them classified information or information that he learned as Director of Security for the SSCI that was not otherwise publicly available.

### THE DEFENDANT'S COMMUNICATION WITH REPORTERS

10.    Despite WOLFE's statements, WOLFE had, in truth, engaged in extensive contact with multiple reporters, including conveying to at least two reporters information about MALE-1. WOLFE used his personal cell phone, his SSCI-issued electronic mail account, and anonymizing messaging applications, including Signal and WhatsApp, to exchange electronic communications with reporters.

11.    For example, between in or around December 2015 and in or around June 2017, WOLFE and REPORTER #1 communicated at least five times using his SSCI email account.

12.    WOLFE regularly met clandestinely in person, and communicated, with REPORTER #2, with REPORTER #3, and with other reporters, in places where the substance of their communications was unlikely to be detected by others, including secluded areas of the Hart Senate Office Building, restaurants and bars, and private residences.

### REPORTER #2

13.    During in or around 2013 and in or around 2014, REPORTER #2 was an undergraduate student serving as an intern with a news service in Washington, D.C.

14.    In approximately December 2013, WOLFE and REPORTER #2 began a personal relationship that continued until in or around December 2017.

15.    From in or around mid-2014 through in or around December 2017, REPORTER #2 was employed in Washington, D.C. by several different news organizations covering national security matters, including matters relating to the SSCI.   During this period, REPORTER #2 published dozens of news articles about SSCI and its activities.

5

16.     From in or around mid-2014 through in or around December 2017, WOLFE and REPORTER #2 exchanged tens of thousands of electronic communications, often including daily texts and phone calls, and they frequently met in person at a variety of locations including Hart Senate Office Building stairwells, restaurants, and REPORTER #2's apartment.  WOLFE and REPORTER #2 also communicated with each other through encrypted cell phone applications.

### REPORTER #2 PUBLISHED INFORMATION ABOUT MALE-1 AFTER COMMUNICATING WITH THE DEFENDANT

17.     In or around March 2017, a particular Executive Branch agency agreed to furnish the SSCI with a specific classified document ("the Classified Document") for official purposes. The Classified Document contained both SECRET and TOP SECRET information, including SECRET-level information regarding the identity and activities of the individual referred to in this Indictment as MALE-1.

18.     On or about March 17, 2017, the Classified Document was transported to the SSCI. As Director of Security, WOLFE received, maintained, and managed the Classified Document on behalf of the SSCI.

19.     On or about March 17, 2017, WOLFE exchanged 82 text messages with REPORTER #2, and that evening engaged in a 28-minute phone call with REPORTER #2.

20.     On or about April 3, 2017, a news organization published an online article, under REPORTER #2's byline, that revealed the identity of MALE-1.

a.     On or about that same date, both before and after the online news article was published, WOLFE and REPORTER #2 exchanged approximately 124 electronic communications.

b.     Approximately 20 minutes after the online news article was published, WOLFE and REPORTER #2 had a cellphone call that lasted 7 minutes.

6

    c.      Thereafter, on or about that date, REPORTER #2 appeared on a national

cable television show to discuss REPORTER #2's online news article. Approximately 90

minutes later, WOLFE and REPORTER #2 had a phone call lasting 15 minutes.

    21.     In or around December 2017, but before being interviewed by the FBI, WOLFE

sent a text message to REPORTER #2 that included the following: "I've watched your career take

off even before you ever had a career in journalism. . . . I always tried to give you as much

information that I could and to do the right thing with it so you could get that scoop before anyone

else . . . . I always enjoyed the way that you would pursue a story like nobody else was doing in

my hallway. I felt like I was part of your excitement and was always very supportive of your

career and the tenacity that you exhibited to chase down a good story."

### REPORTER #3

    22.     In or around 2017, REPORTER #3 was employed as a reporter with a news

organization in Washington, D.C., and was assigned to cover national security matters, including

matters relating to the SSCI.

    23.     Between in or around September 2017 and continuing until at least in or around

December 2017, REPORTER #3 and WOLFE regularly communicated with each other using the

anonymizing messaging application Signal, text messages, and telephone calls.

### REPORTER #3 PUBLISHED INFORMATION ABOUT MALE-1
### THAT WAS DISCLOSED TO HER BY THE DEFENDANT

    24.     On or about October 16, 2017, WOLFE informed REPORTER #3, using Signal,

that he had served MALE-1 with a subpoena to appear before the SSCI.

    25.     On or about October 17, 2017, REPORTER #3 asked WOLFE, using Signal, to

provide REPORTER #3 with MALE-1's contact information, and WOLFE agreed to do so. Later

that day, a news organization published a story, under REPORTER #3's byline, reporting that

MALE-1 had been subpoenaed to testify by the SSCI, and that MALE-1 had been contacted by the news organization for comment. After the story was published, WOLFE congratulated REPORTER #3, using Signal, stating "Good job!" and "I'm glad you got the scoop." REPORTER #3 wrote back, using Signal, "Thank you. [MALE-1] isn't pleased, but wouldn't deny that the subpoena was served."

26.     On or about October 18, 2017, MALE-1 sent an email to the SSCI, complaining that the news organization had published REPORTER #3's news article of the previous day, reporting that he had been subpoenaed.

27.     On or about October 24, 2017, at 7:00 a.m., WOLFE informed REPORTER #3, using Signal, that MALE-1 would testify in closed hearing before the SSCI "this week." At 9:58 a.m., REPORTER #3 sent an email to MALE-1, asking him to confirm that he would be "paying a visit to Senate Intelligence staffers this week." At 9:23 p.m., MALE-1 sent an email to the SSCI, forwarding the email he had received from REPORTER #3, and complaining that the details of his appearance had been leaked to the press.

**REPORTER #4**

28.     In or around 2017, REPORTER #4 was employed as a reporter with a news organization in Washington, D.C., and was assigned to cover national security matters, including matters relating to the SSCI.

29.     Between in or around October 2017 and continuing until at least in or around December 2017, REPORTER #4 and WOLFE regularly communicated with each other using the anonymizing messaging application Signal, text messages, and telephone calls.

8.

14

30.     In or around October 2017, WOLFE contacted REPORTER #4 using Signal,

offering to act as an anonymous source. WOLFE specifically cautioned REPORTER #4 to "never

use [WOLFE's] name to any of [REPORTER #4's] colleagues or other news related colleagues."

### FALSE STATEMENT

31.     On or about December 15, 2017, in the District of Columbia, defendant JAMES A.

WOLFE did willfully and knowingly make a materially false, fictitious, and fraudulent statement

and representation in a matter within the jurisdiction of the Executive Branch of the Government

of the United States, in that the defendant executed a written questionnaire in which he falsely

stated and represented to agents of the Federal Bureau of Investigation that he did not have contact

with any reporter, when in truth and in fact, and as he then well knew and believed, WOLFE did

have contact with REPORTER #1, REPORTER #3, and REPORTER #4, variously, on multiple

occasions from at least in or around December 2015 until at least on or about December 15, 2017.

**(18 U.S.C. § 1001(a)(2) – False Statement to a Government Agency)**

9

## COUNT TWO

32.    The factual allegations contained in paragraphs 1 through 30 are incorporated herein as if set forth in full.

33.    On or about December 15, 2017, in the District of Columbia, defendant JAMES A. WOLFE did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation, in a matter within the jurisdiction of the Executive Branch of the Government of the United States, to wit, the defendant falsely stated and represented to agents of the Federal Bureau of Investigation that he did not disclose to REPORTER #2 information that he learned as Director of Security for the Senate Select Committee on Intelligence that was not otherwise publicly available, when in truth and in fact, and as he then well knew and believed, WOLFE did disclose such information to REPORTER #2, between on or about March 17, 2017, and on or about April 3, 2017.

**(18 U.S.C. § 1001(a)(2) – False Statement to a Government Agency)**

10

## COUNT THREE

34.     The factual allegations contained in paragraphs 1 through 30 are incorporated herein as if set forth in full.

35.     On or about December 15, 2017, in the District of Columbia, defendant JAMES A. WOLFE did willfully and knowingly make a materially false, fictitious, and fraudulent statement and representation in a matter within the jurisdiction of the Executive Branch of the Government of the United States, in that the defendant falsely stated and represented to agents of the Federal Bureau of Investigation that he did not disclose to REPORTER #3 information that he learned as Director of Security for the Senate Select Committee on Intelligence and that was not otherwise publicly available, when in truth and in fact, and as he then well knew and believed, WOLFE did disclose such information to REPORTER #3, during in or around October 2017.

**(18 U.S.C. § 1001(a)(2) – False Statement to a Government Agency)**

A TRUE BILL

FOREPERSON

SESSIE K. LIU

Attorney of the United States in
and for the District of Columbia

U.S. District and Bankruptcy Courts
for the District of Columbia
A TRUE COPY
ANGELA B. CAESAR, Clerk

By _____
Deputy Clerk

JUN 0 7 2018

11

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA

        v.

JAMES WOLFE

\*

\*

\*

Case No.   18-mj-1692-JMC

\* \* \* \* \* \*

## ORDER APPOINTING FEDERAL PUBLIC DEFENDER

The above named Defendant having been found to be indigent and entitled to appointment of counsel under the Criminal Justice Act, and the government having proffered that they know of no conflict precluding appointment of the Public Defender,

IT IS ORDERED this ___8th___ day of _____June_____, ___2018___, that the Federal Public Defender for the District of Maryland is appointed to represent the above named Defendant.

J. Mark Coulson
United States Magistrate Judge

Case 1:18-mj-01692-JMC Document 10 Filed 06/08/18 Page 19 of 25

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| v. | * | Case No.   18-mj-1692-JMC |
| JAMES WOLFE | * | |
| | * | |

\* \* \* \* \* \*

### CONTRIBUTION ORDER

Although counsel has been appointed to represent the Defendant, it appears to the United States Magistrate Judge the Defendant may have sufficient resources to contribute financially toward the payment of counsel fees.

It is therefore required that court-appointed counsel as well as counsel for the government bring this matter to the attention of the judicial officer at the time of conviction or acquittal. The judicial officer may request the Probation Department investigate the Defendant's financial resources and recommend whether the Defendant should be required to pay any sum as a result of services rendered by court-appointed counsel pursuant to the provisions of 18 U.S.C. § 3006A(f).

_June 8, 2018_
Date

_____
J. Mark Coulson
United States Magistrate Judge

AO 466A (Rev. 12/09; MD 02/10) Waiver of Rule 5 & 5.1 Hearings (Complaint or Indictment)

# UNITED STATES DISTRICT COURT
for the
District of Maryland

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 18-mj-1692-JMC |
| | ) | |
| James Wolfe | ) | Charging District's Case No. 1:18-cr-00170 |
| _Defendant_ | ) | |

## WAIVER OF RULE 5 & 5.1 HEARINGS
### (Complaint or Indictment)

I understand that I have been charged in another district, the _(name of other court)_    United States District Court, District of Columbia

I have been informed of the charges and of my rights to:

(1)    retain counsel or request the assignment of counsel if I am unable to retain counsel;

(2)    an identity hearing to determine whether I am the person named in the charges;

(3)    production of the warrant, a certified copy of the warrant, or a reliable electronic copy of either;

(4)    a preliminary hearing within 14 days of my first appearance if I am in custody and 21 days otherwise — unless I am indicted — to determine whether there is probable cause to believe that an offense has been committed;

(5)    a hearing on any motion by the government for detention;

(6)    request transfer of the proceedings to this district under Fed. R. Crim. P. 20, to plead guilty.

I agree to waive my right(s) to:

☐    an identity hearing and production of the warrant.

☐    a preliminary hearing.

☐    a detention hearing.

☒    an identity hearing, production of the warrant, and any preliminary or detention hearing to which I may be entitled in this district. I request that those hearings be held in the prosecuting district, at a time set that court.

I consent to the issuance of an order requiring my appearance in the prosecuting district where the charges are pending against me.

Date:    June 8, 2018             _____
                                              _Defendant's signature_

                                  _____
                                            _Signature of defendant's attorney_

Christian Lassiter
                                       _Printed name of defendant's attorney_

AO 94  (Rev. 01/09, MD 6/09) Commitment to Another District

# UNITED STATES DISTRICT COURT
### for the
### District of Maryland

2018 JUN -8  P 4: 03

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | |
| | ) | Case No.  _18-mj-1692-JMC_ |
| | ) | |
| James Wolfe | ) | Charging District's |
| *Defendant* | ) | Case No.  _1:18-cr-00170_ |

## COMMITMENT TO ANOTHER DISTRICT

The defendant has been ordered to appear in the  United States District Court  District of  _Columbia_  .

The defendant may need an interpreter for this language:  _N/A_  .

The defendant:  ☐ will retain an attorney.

☒ is requesting court-appointed counsel.  *Note: contribution order entered in D.Md.*

The defendant remains in custody after the initial appearance.

**IT IS ORDERED:** The United States marshal must transport the defendant, together with a copy of this order, to the charging district and deliver the defendant to the United States marshal for that district, or to another officer authorized to receive the defendant.  The marshal or officer in the charging district should immediately notify the United States attorney and the clerk of court for that district of the defendant's arrival so that further proceedings may be promptly scheduled.  The clerk of this district must promptly transmit the papers and any bail to the charging district.

Date:  _June 8, 2018_

_____
*Judge's signature*

J. Mark Coulson, United States Magistrate Judge
*Printed name and title*

# UNITED STATES DISTRICT COURT

RECEIVED for the
USMS District of Maryland
BALTIMORE, MD

|  |  |  |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No.  18-mj-1692-JMC |
| James Wolfe | ) | |
| *Defendant* | ) | |

2018 JUN -8  P 4: 03

## ORDER SETTING CONDITIONS OF RELEASE

IT IS ORDERED that the defendant's release is subject to these conditions:

(1)   The defendant must not violate any federal, state or local law while on release.

(2)   The defendant must cooperate in the collection of a DNA sample if the collection is authorized by 42 U.S.C. § 14135a.

(3)   The defendant's residence must be approved by the U.S. Pretrial Services Officer (USPTO) supervising the defendant's release and the defendant must advise the court, defense counsel, and the U.S. attorney in writing before any change in address or telephone number.

(4)   The defendant must appear in court as required and must surrender to serve any sentence imposed

The defendant must appear at *(if blank, to be notified)* _Must appear on 6/11/18 at 9:00 am at_
_FBI/Washington Field office_

_____ on _and_
_Must appear on 6/12/18 at 1:45 pm before_ *date and time*
_Judge Robin Meriweather, US District Court_
_District of Columbia_

## Release on Personal Recognizance or Unsecured Bond

IT IS FURTHER ORDERED that the defendant be released on condition that:

☐   (5) The defendant promises to appear in court as required and surrender to serve any sentence imposed.

☐   (6) The defendant executes an unsecured bond binding the defendant to pay to the United States the sum of

_____ dollars ($ _____ )
in the event of a failure to appear as required or surrender to serve any sentence imposed.

## ADDITIONAL CONDITIONS OF RELEASE

Upon finding that release by one of the above methods will not by itself reasonably assure the defendant's appearance and the safety of other persons or the community,

IT IS FURTHER ORDERED that the defendant's release is subject to the conditions marked below:

☐   (7) The defendant is placed in the custody of (name of person or organization): _____
at an address approved by the Pretrial Services Office.
The defendant must not change that address without advance approval by the Pretrial Services Office who agrees (a) to supervise the defendant in accordance with all of the conditions of release, (b) to use every effort to assure the defendant's appearance at all scheduled court proceedings, and (c) to notify the court immediately if the defendant violates any condition of release or disappears.

Signed: _____     _____     _____
         Custodian or Proxy                    Date                  Tel. No (only if above is an organization)

☑ (8)   The defendant must:

☐   (a)   report to the _____

telephone number _____, no later than _____

☑   (b)   report on a regular basis to the supervising officer. The defendant shall promptly obey all reasonable directions and instructions of the supervising officer. *weekly telephone check in*

☐   (c)   execute a bond or an agreement to forfeit upon failing to appear as required the following sum of money or designated property:
_____

☐   (d)   post with the court the following proof of ownership of the designated property, or the following amount or percentage of the above-described sum
_____

☐   (e)   execute a bail bond with solvent sureties in the amount of $ _____.

☐   (f)   maintain or actively seek employment as approved by the U.S. Pretrial Services Officer.

☐   (g)   maintain or commence an education program.

☑   (h)   surrender any passport to: *Clerk of Court by 6/11/18*

☑   (i)   obtain no passport.

☐   (j)   abide by the following restrictions on personal association, place of abode, or travel:
*Travel restricted to D Md and D. DC for court proceedings or meetings w/ counsel*

☐   (k)   avoid all contact, directly or indirectly, with any person who is or may become a victim or potential witness in the investigation or prosecution, including but not limited to:
_____

☐   (l)   undergo medical or psychiatric treatment: _____

☐   (m)   abide by a curfew from _____ to _____

☐   (n)   maintain residence at a halfway house or community corrections center, as the pretrial services office or supervising officer considers necessary.

☑   (o)   refrain from possessing a firearm, destructive device, or other dangerous weapons.

☐   (p)   refrain from ☐ any ☐ excessive use of alcohol.

☐   (q)   refrain from use or unlawful possession of a narcotic drug or other controlled substances defined in 21 U.S.C. § 802, unless prescribed by a licensed medical practitioner.

☐   (r)   submit to any testing required by the pretrial services office or the supervising officer to determine whether the defendant is using a prohibited substance. Any testing may be used with random frequency and include urine testing, the wearing of a sweat patch, a remote alcohol testing system, and/or any form of prohibited substance screening or testing. The defendant must refrain from obstructing or attempting to obstruct or tamper, in any fashion, with the efficiency and accuracy of any prohibited substance testing or monitoring which is (are) required as a condition of release.

☐   (s)   participate in a program of inpatient or outpatient substance abuse therapy and counseling if the pretrial services office or supervising officer considers it advisable.

☐   (t)   submit to a location monitoring program

☐       (i)   as directed by the supervising officer; or

☐       (ii)   restricted to the residence except for employment, education, religious services, medical purposes, substance abuse testing/treatment, mental health treatment, attorney visits, court appearances, or other court ordered obligations; or

☐       (iii)   restricted to the residence except for medical purposes, court appearances, or other activities specifically approved by the court.

☐   (u)   Refrain from the use of computer systems, Internet-capable devices and/or similar electronic devices at any location (including employment or educational program) without the prior written approval of the U.S. Probation or Pretrial Services Officer. The defendant shall cooperate with the U.S. Probation and Pretrial Services Office monitoring of compliance with this condition. Cooperation shall include, but not be limited to, participating in a Computer & Internet Monitoring Program, identifying computer systems, Internet-capable and/or similar electronic devices the defendant has access to, allowing the installation of monitoring software/hardware at the defendant's expense, and permitting random, unannounced examinations of computer systems, Internet-capable devices and similar electronic devices under the defendant's control.

☑   (v)   *Do not possess any personal identify info other than your own) Notify current & potential employers of pendency of this case*

☐   (w)   *Do not access, discuss or disclose classified info to unauthorized person. Do not apply for position or emp. w/ private industry involving use of security clearances w/o approval of Gov't or Court*

## ADVICE OF PENALTIES AND SANCTIONS

TO THE DEFENDANT:

YOU ARE ADVISED OF THE FOLLOWING PENALTIES AND SANCTIONS:

Violating any of the foregoing conditions of release may result in the immediate issuance of a warrant for your arrest, a revocation of your release, an order of detention, a forfeiture of any bond, and a prosecution for contempt of court and could result in imprisonment, a fine, or both.

While on release, if you commit a federal felony offense the punishment is an additional prison term of not more than ten years and for a federal misdemeanor offense the punishment is an additional prison term of not more than one year. This sentence will be consecutive (*i.e.*, in addition to) to any other sentence you receive.

It is a crime punishable by up to ten years in prison, and a $250,000 fine, or both, to: obstruct a criminal investigation; tamper with a witness, victim, or informant; retaliate or attempt to retaliate against a witness, victim, or informant; or intimidate or attempt to intimidate a witness, victim, juror, informant, or officer of the court. The penalties for tampering, retaliation, or intimidation are significantly more serious if they involve a killing or attempted killing.

If, after release, you knowingly fail to appear as the conditions of release require, or to surrender to serve a sentence, you may be prosecuted for failing to appear or surrender and additional punishment may be imposed. If you are convicted of:

(1) an offense punishable by death, life imprisonment, or imprisonment for a term of fifteen years or more - you will be fined not more than $250,000 or imprisoned for not more than 10 years, or both;

(2) an offense punishable by imprisonment for a term of five years or more, but less than fifteen years - you will be fined not more than $250,000 or imprisoned for not more than five years, or both;

(3) any other felony - you will be fined not more than $250,000 or imprisoned not more than two years, or both;

(4) a misdemeanor - you will be fined not more than $100,000 or imprisoned not more than one year, or both.

A term of imprisonment imposed for failure to appear or surrender will be consecutive to any other sentence you receive. In addition, a failure to appear or surrender may result in the forfeiture of any bond posted.

### Acknowledgment of the Defendant

I acknowledge that I am the defendant in this case and that I am aware of the conditions of release. I promise to obey all conditions of release, to appear as directed, and surrender to serve any sentence imposed. I am aware of the penalties and sanctions set forth above.

_____
                                                          *Defendant's Signature*

BALTIMORE, MARYLAND
_____
                                                          *City and State*

### Directions to the United States Marshal

☑ The defendant is ORDERED released after processing.

☐ The United States Marshal is ORDERED to keep the defendant in custody until notified by the clerk or judge that the defendant has posted bond and/or complied with all other conditions for release. If still in custody, the defendant must be produced before the appropriate judge at the time and place specified.

Date:    June 8, 2018 _____          _____
                                                                          *Judicial Officer's Signature*

                                               _____
                                               J. Mark Coulson,  United States Magistrate Judge
                                                                          *Printed name and title*

# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND
### OFFICE OF THE CLERK

Felicia C. Cannon, Clerk
Catherine M. Stavlas, Chief Deputy
Elizabeth B. Snowden, Chief Deputy

Reply to Northern Division Address

June 11, 2018

## RECEIPT FOR SURRENDER OF PASSPORT

USA v. James A. Wolfe
1:18−mj−01692−JMC

Received 6/11/2018 from Counsel, one passport ending with 5473 issued by the country of the United States of America which is being surrendered to the Court as a special condition of the defendant's release. This passport is to be held in the custody of the Court until further ordered. Following the termination of these proceedings, the Clerk will order the destruction of any passport in custody beyond twenty years from date of issuance of the passport.

Very truly yours,

_____/s/_____
Felicia C. Cannon
Clerk, U.S. District Court
District of Maryland
prepared by: K. Owens

Northern Division ° 4415 U.S. Courthouse ° 101 W. Lombard Street ° Baltimore, Maryland 21201 ° 410−962−2600
Southern Division ° 240 U.S. Courthouse ° 6500 Cherrywood Lane ° Greenbelt, Maryland 20770 ° 301−344−0660

Visit the U.S. District Court's Web Site at www.mdd.uscourts.gov

25